May it please the Court. Good morning, Your Honors. My name is Scott Rafferty. I represent Harry Shetty and the electors who petitioned the City of Folsom to adopt district elections and who sought their judicially tailored remedy when the city declined to do so within the statutory period. I'd like to reserve four minutes for rebuttal. We're here today to defend two strong claims that are entirely separate. Our primary claim is at the core of the sovereignty of the state of California, how local government is structured. And the California Voting Rights Act is an act by the legislature to create a very strong presumption against at-large elections. Didn't you get district elections? We got a map, Your Honor, that is discriminatory and which is, in fact, expelled from the council the only Asian American ever elected. Okay, but that hadn't happened when the district, or you're giving us facts that occurred afterwards? What I'm concerned about is what was the district court facing when it ruled on the question of remand to the Sacramento Superior Court? What did the At that point, there was still time to correct the, to enjoin the election, to enjoin the certification of the election as the usual remedy when you're running up against an election. It was time to change the election, to impose a map. As I read the transcript, the district court said, look, the council has adopted a district-wide, or by district plan, and there isn't any further relief that I can afford as a federal court. I'm considering remanding the supplemental state claims, and you agreed to that, did you not? I, we were absolutely, we wanted that to go back to the You wanted to go back to the Absolutely. Yeah. So why are we here? Because he didn't remand the case. He declined jurisdiction. He extinguished the case. Right, and then you went back and litigated the claims that were otherwise pending before the federal court. Your Honor, we filed a new action, and we are trying to, to, which is seriously prejudiced, because as you pointed out, they did conduct an election, and they are making the argument that they are no longer at large. But why can't you raise those issues with the Sacramento Superior Court, before whom your new action is pending? Because we're facing an argument of mootness, because in the intervening period At the time the federal court ruled, it was moot, was it not? No, it wasn't moot, not at all. No election had been held, and they had not obtained approval, either from the voters or from the Superior Court, to make the transition to district elections. Okay, but you didn't make that argument to Judge Mendez at the time that he said from the bench, I'm inclined to dismiss because I don't see any relief here that I can fashion. Well, your Honor, he led us to believe that he was remanding the case. But what's the difference between if it were remanded or now that you refiled in a state court? What's the practical difference? It's very significant, because we have to overcome, well, there's several. First of all, we have to overcome the argument that they no longer satisfy the essential element of the California Voting Rights Act, which is being at large. They have had an election. But don't you face all these same issues, whether we remand it back to the state court or whether you proceed with the current refiled state court complaint? No, your Honor, I don't believe we do, because the former action, a Section 2 claim, for example, we can't find a Section 2 claim. Section 2 of what? No, I'm sorry, the Federal Voting Rights Act. But what about your state law claim? I think that's what everybody's asking about. Well, there have been occasions in the past where these cases have taken longer than the electoral cycle. And in all those cases, it's not moved. It's not moved simply because an election happens. So in Section 2 cases, the federal cases, Ruiz v. Santa Maria took eight years. Let me let me try here. So Judge Mendez rules, he dismisses. You refile in state court. What did you what what did you refile in state court? We refiled, we were attempting to refile a CVRA action with the Fair Maps Act and a violation of the sequencing. Are you saying you're attempting to file, you filed or not filed? Well, we filed it and it's been stayed pending the action of this court. So you've got an action in state court raising your California state state law claims. Have you put in your federal claims as well or just your state claims? No, we have not, your Honor. And that's actually. Let's go piece by piece so I can get it. So this suit you have filed, which has been stayed in state court, is only the state law claims? Yes. And you've done that in order to prevent another removal, I assume. Correct. Well, we asked. It's unclear whether the remember we were dismissed. The federal claim was dismissed without leave to replead. And then there was the issue of whether it was with prejudice or without prejudice. I got you. And he was dismissed with prejudice. We don't know what the preclusive effect is. But in any event, your state law claim is only a state law claim in state court. Yes, that's correct. And that can go forward. I understand the election that you were trying to get your relief ahead of time. That's gone. But you still are interested in relief to get what you view as an appropriate district by district line drawing. So that's what you're after in state court? Remedial line drawing. Remedial in what sense? Want to redo the election? Well, we're going to have to re-sequence at a minimum to get the Asian community to be able to election the presidential year. That's a very important element of any remedy in our view. And are you saying that the state court doesn't have the authority to do that in state elections? Well, the opposition that was filed by the city says that the case now is moved, that in the intervening period, while because it was removed, they had an election and the election has mooted our new case. But the fact that the district court dismissed it on grounds of mootness is not a determination on the merits. So that the federal court never passed upon the legitimacy of your claims, did it? But the district court did not dismiss it as moot. The district court said that it was leaving that determination to the state court. And when we left the room, we believed that the district court was remanding. And in fact, with or without prejudice, the parties were asked to essentially confer on that. And the city reported back that the district court had no choice but to proceed and adjudicate. We, of course, wanted to remand and our filing was rejected. So we never really got an opportunity. I'm having trouble understanding exactly what happened and exactly what your problem is with respect to your state law claims. What you want is a different line drawing in your district by district elections. And are you seeking retroactive relief, like to say undoing the result of the past election? Or are you simply seeking prospective relief so that the lines are drawn, in your view, appropriately for future elections? What are you after in your state court? That is a possibility. We need retroactive relief in at least to the extent of shortening the period of the term of the people of the council members elected in 2022. But that's in front of the state court. And I don't know whether you're entitled to that relief or not, but that's what's going on in state court. And you're saying that the district court should not have remanded after he ruled against you on your federal claims? He should have remanded. And instead, we have. I'm sorry. He shouldn't have dismissed. I mean, what's the difference between remanding and dismissing? Because I assume you filed promptly in state court. So what was the adverse consequences for his failure to remand? The failure to remand means that we have this issue of they were able to conduct an election. I don't understand. So I'll ask the question again. What's the difference in practical consequence with respect to your state law claims from the fact that the district court didn't remand, but instead required you to file separately in the state court? We need to prove that the case is not moved. But if you're asking for a prospective relief, it's not moved by definition. Counsel, can you help? I'm looking at the court's order. This is E.R. 10. It's page looks like six of the seven page district court order. And he says the court grants the defendant's motion to dismiss with prejudice as to claims two, five and seven. Those are the federal claims, right? Correct. Okay. And then he drops a footnote and he says, as indicated at the hearing, the court is persuaded that plaintiff's CVRA, I assume that's California Voting Rights Act, yes, sir, claim is rooted by defendant's city's transition to a by district election system. But having declined supplemental jurisdiction, the court leaves the matter to its proper resolution by the superior court. So why can't the superior court give you the relief that you're asking for? Well, if the previous case was filed long before the election and before they made the transition, they're saying that the moment that they adopted the map, the case became moot. And we are disputing that. But it's a very different case. The federal court didn't decide that question, did it? It basically left it to the state court. Well, if it left it to the state court, why didn't it remand the existing case? Because the existing case has been eliminated. Well, he said the court declined supplemental jurisdiction over the remaining state law claims. And I read that as saying, I'm not going to rule on any of these state claims. And then you refile the action in state court, presumably re-alleging the state claims that you had before. Now you have some additional facts that you didn't have at the time Judge Mendez ruled on the federal action. If you have a challenge to the bi-district plan that the city has adopted, why can't you ask the Sacramento Superior Court to address that issue? We are. But it is a different question. It's been prejudiced. We also, we have a substantial investment in fees in the original action. And to have that, that raises the question. But can't you see the recovery of those fees in the state superior court action? It is. We will definitely attempt to. Why isn't the simplest solution from our standpoint to simply affirm the district court's dismissal, get an order out promptly and let you get on with your litigation in front of the superior court? Well, if this court would make clear that it's that the intention is to preserve the state law action and not to prejudice it. There is another point that was raised during the oral argument on the motion, which is, can the district court, I'm sorry, the superior court, in the course of developing a new map, can they consider the alleged 14th Amendment violations, the intentional discrimination? And because he's ruling that that was implausible under Iqbal, and he's dismissing it with prejudice. And that is the second part of our argument, because even though it is secondary in our minds, the new map, the map that they've proposed, does demonstrate intentional discrimination under Garza. Garza says. Let me ask you this. So Judge Mendez order is July 13. When did you after that order? Did you file in state court? We filed in November, immediately before the election, but due to. So he. So his order is July 13, 2022. You file in state court in November. November. It was that same year. We attempted to file before the election. It wasn't stamped until after the election. But in November. So you didn't file right away. You waited a month or a couple of months. Yeah. We did, Your Honor. So let me ask you about the federal claim. The district judge in the oral argument says, you know, you might have a pretty good claim number two under the Federal Voting Rights Act. He says, you know, that might be a pretty good claim. But then when he gives a written order, he says, there's no chance of you prevailing on that claim. And I'm not even going to allow you to the possibility of amendment. Correct. If we were to disagree with the district judge on that point and say that at least as to the claim under the Federal Voting Rights Act, you should have been allowed to amend. And we vacate that part of the federal district court's opinion, the dismissal with prejudice. Would that allow you then to add that federal claim either to the state court proceeding or to continue in federal district court with respect to your Federal Voting Rights Act claim? Well, generally, when that has occurred in the circuit in the past, they've directed the district court to reconsider under Gibbs, if that's the applicable standard. And 1367 C, it's determination as to whether to remand or not. Well, he can remand only after the federal claims are dismissed. So long as the federal claim is alive. So I'm asking you, what happens if we say the district court erred in dismissing without prejudice, without giving you a chance to amend? It's almost axiomatic that if you got a complaint and the amended complaint that he's looking at is the first complaint in which the federal claim has been alleged. That's why it was removed. Correct. It's actually almost axiomatic that he should not have dismissed without prejudice. So if we say, well, wait a minute, he has to give you a chance to amend in federal court with respect to at least the Federal Voting Rights Act claim. What happens then? Correct. I mean, I think he has a duty to adjudicate it. But the facts that you want to allege occurred after July 13. Did they not? The actual election was held. And that's the proof that you're going to offer based on the results of that election that shows that there was a discriminatory intent in adopting MAP 2. They adopted the MAP the hours after the deadline for following the amendment to the state complaint. And it was one of the two candidate MAPs they had narrowed it down to, and it was intensely discriminatory under Garza. Did that all occur after July 13? That's my question. No, because the process had been going on and they had already reached a decision by then. They hadn't finalized it, but they had lined out any MAP that wasn't intensely discriminatory. And they finalized that decision hours after. Strategically, they delayed it until after our deadline. But the process was already, they'd already decided. So if we do what you're asking us to do, are we going to end up in a situation where we have two parallel proceedings, one in state court, one in federal court, addressing the same issue? They're not addressing the same issue because this is what is. Doesn't California Voting Rights and Federal Voting Rights Act look at discriminatory intent in drawing districting MAPs? No, there's no, the California Voting Rights Act does not apply to redistricting. It only applies to at large. And it has no intent, requirement, or branch like the federal law. It's really the opposite of the federal law. The federal law is, for reasons of federalism, it has a presumption against outlawing multi-member districts in at large jurisdictions. The California Voting Rights is a very strong presumption against at large districts. So you're telling me that you can't introduce that evidence to show discriminatory intent under California Voting Rights laws? No, there's no, there's no cause of action. Under California law, well, there's the Fair MAPs Act that would apply separately, but that wouldn't be a remedy. Different statute. That's a different statute. That wouldn't be a remedy for the past action. One of the problems here is that at large entrenches incumbents, and there were incumbents that were in office for 20 years. All right, but that's not what I'm wrestling with. I'm trying to understand how you will be prejudiced if you cannot just continue your litigation in state court where you originally filed it. Well, what about our federal claim? What about our discrimination? I'm not sure those claims are different from your California claims. That's what I'm struggling with. They're completely different. That's the national telephone warning, just don't worry about it. We're seeking a remedy based on voter behavior, but no common nucleus of fact in the past. And we're seeking a remedy based on what happened in the summer of 2022 when they had hearings that were replete with procedural regularities. And the core is, because I see my time is running out, Garza. I mean, Garza says that you can't split minority neighborhoods, whether or not there's a majority minority district. And that's the law on the surface. And and the court had a big discussion of the the effects tests under under. So you'd rather be in federal court than state court, because that's the opposite of the position that you took in front of Judge Mendez. We're not we're not form shopping. We said we'd rather be in state court, but we want to be heard and we want to have both claims for you. You want to be heard in both courts? Yes. And if it's necessary to have two proceedings, that's that's that's fine, because I'm not sure as a federal judge, I agree with that. Counsel, I mean, one of the things we have to be respectful of is the fact that this is a state election, that there's a state court that has jurisdiction over a substantial amount of your claim. And we can't just willy nilly interfere in state elections without a pretty darn good reason to do so. But we can't restate a 14th Amendment claim that's been dismissed with prejudice and wrongfully dismissed. And you can't you can't uphold that because my time is up. We'll give you extra time on rebuttal. In your brief, you repeatedly mentioned that there were statements during city council hearings that showed racial animus, but you never really cite them. And I've watched a good number of the city council hearings on YouTube, but I don't think they get too many hits. But why some of that my law clerk watched all of them and we don't didn't see anything. But what what are these statements that showed racial animus? Well, animus or an intent to discriminate, which is not the same thing in this district, but yeah, there were just an example of what are they? One person, when they were considering a black for vacancy, said, well, we had a black black person elected to this council before and it was someone who was convicted 20 years earlier. And and expelled from the council for cocaine distribution. And that was just not relevant to the candidates who were for the council. We had a Latino woman who said and who was not supported by the Latino community, but she was elected. And she said, well, I'm a person of color and therefore we shouldn't be having this. And of course, the target community here is South Asian, which is much larger community. So, you know, it was affirmative expressions that this was the wrong thing to do and that the South Asian community was not entitled to be represented. And and there were procedural irregularities and they were single. And it is in the complaint, actually, they had a public negotiation with the incumbent, with the only Asian ever elected in a presidential election. And and that they could they could draw him in or they could draw him out and ultimately drew him out. But that was that was really strong evidence of discrimination. Intentional discrimination. I mean, your time is up. Thank you. Good morning, may please the court. Greg Kettles for the city of Folsom. Plaintiffs have a theory in search of some facts, some factual allegations, and they're just not coming up with with the factual allegations. Before I get into the 12B-6 and the dismissal of the federal claims, I want to first address the dismissal versus remand issue, which the your honor spent a great deal of time talking with the plaintiff about. It just doesn't matter in this situation whether the claims were remanded or whether they were dismissed. They were dismissed on these facts. We really didn't get a clear answer why. So why do you think you're opposing counsel? Is it a difference in attorney's fees? What's the issue? Why is he fighting that so hard here? Frankly, your honor, I'm I've been struggling to answer that question myself. I just don't I don't quite understand. They refiled the state court. The refiled the exact same state law. Would the city be on the hook for potentially larger attorney's fees? Your honor, it's the same causes of action. There is actually an express cause of action that's been added in the state court for attorney's fees. But again, remand versus dismissal, I don't think that it matters from the city's perspective as far as risk of liability. Opposing counsel has said that they were prejudiced because an election was allowed to happen. And I think one of your honors posed the question, well, how long did you wait to file your state court complaint? They waited months. So we have an adjudication in the federal court in July. They don't file until the eve of the election, they say. And actually, the file stamp is a few weeks after that. And in the state court action that's now pending, are they seeking prospective relief so that the lines of be redrawn? Is that what they're after? As I recall, your honor, they are seeking injunctive relief for everything. Well, I say for everything. Help me understand what everything means. So it's a little bit ill-defined, but they're seeking to throw out the existing map that the city adopted. So they want a different map. They want a different map. So it's not moot. They want a different map for a future election. As far as their future remedies go, it's not moot. The issue, whether it's remand versus dismissal, that's moot because they refiled their case in state court. They've complained that, oh, we wanted to have more time to go in to prevent the election in 2022 from happening. Well, the city adopted its map in March of 2022, and we removed to federal court, we filed a motion to dismiss. Plaintiffs did not file a motion for a preliminary injunction in the federal court for six weeks. They could have gone in for a TRO saying, we've got an election in November. We need some relief right now. We can't wait for the hearing on this motion to dismiss. They didn't do that. They waited. And again, after the district court dismissed the federal claims and declined to exercise supplemental jurisdiction over the penitent state claims. Here's my problem with what Judge Mendez did. And that is, he dismissed all of the federal claims with prejudice without allowing an opportunity to amend. That's really almost an automatic reversal if you dismiss with prejudice the first complaint without allowing an opportunity to amend. And Judge Mendez, in his oral talk during the hearing, says, at least with respect to claim two, that's a plausible claim, or at least I'm not so sure it's a dead bang loser. He says something to that effect. But then when he writes his order, he says, your federal claims are so bad that there's no possibility that they can be saved by amendment. I think he's probably wrong. If we were to hold that he was wrong in dismissing with prejudice the federal claims without giving an opportunity to amend the complaint, what happens? Well, in that case, it would go back to the district court. Those federal claims, I guess that you're talking about the second cause of action. The second cause of action. He thinks there's something to it. As the others, I don't know. So that's before the district court again. And we have two lawsuits arising out of the same nucleus of facts. Does the dismissal of the state claims by Judge Mendez stand? Because the premise for his dismissal was that there was no longer any basis for supplemental jurisdiction. Now the federal claims are at least possibly pending because of the possibility of amendment. So what happens to the state claims in federal court? Well, it would be up to the district judge to exercise discretion to assume jurisdiction of the supplemental claims or decline not to. Well, the district has discretion with respect to supplemental claims to dismiss or remand after the federal claim to which they are supplemental disappears. But my premise is that the federal claim is alive again. So can he dismiss those state law claims if the federal claim is alive? I would think that it would be within the district court's discretion to do so. I think even if you have any case law that says that a district judge with a live federal claim and supplemental state law claims can dismiss the supplemental claims while the federal claim is still pending. Well, I believe the statute provides some basis to decline to exercise supplemental jurisdiction with a live federal claim. For example, if state questions of law predominate, they're complex, and the federal judge would say, I'm not going to exercise jurisdiction over those. I'm going to let the state court deal with those. But to get back to your question, Your Honor, about whether the plaintiff should have been allowed leave to amend the federal claim, I don't think so. I'll remind the court that this is not the original complaint. This is a first amended. Yes, but the first amended complaint was the first time the federal claim was alleged. That's true, Your Honor. So the idea that you get one chance to amend should apply to the first time he pleads it, which is in the first amended complaint, and then it's dismissed without an opportunity to amend. The problem, Your Honor, is that the plaintiff has never been able to articulate facts to show that an amendment would be other than futile. Well, on the other hand, even Judge Mendez says, as to Claim 2, there may be something here. Your Honor, I believe what happened is that Judge Mendez went back to look at the papers and reflected on what was said at oral argument and said that there's nothing here. If I could, I invite the court to consider the Iqbal-Twombly pair of cases. I think Iqbal is particularly instructive here. In Iqbal, it was a religion and race and national origin discrimination case. And the plaintiffs in that case said, we've been seized and put in conditions of confinement based on our religion, our national origin, and our race. They sued the federal government. And the 12b-6 motion was brought, and the Supreme Court said, emphasizing in a 12b-6, you can't just have conclusory allegations. You can't say, they discriminated against me, parroting them. Yeah, no, I know Iqbal very well. Okay. And the practice in the federal courts is to treat Iqbal cases and antitrust cases and some federal securities cases as, even though, to the extent that the securities cases come under Rule 8 instead of the Securities Act enacted under President Clinton. Treat them really, even though Rule 8 says they apply to the same thing, they're treated differently. Iqbal and Twombly are, that's one category of case under Rule 8. Then there are the rest of the Rule 8 cases. Well, there are other decisions that have followed Iqbal outside those contexts, Your Honor. And it's a high bar in the sense that the plaintiffs... ...get dismissed that, in fact, are not dismissed. So, Your Honor, I think what happened is Judge Mendez said, no facts have been articulated by the plaintiff. Yeah, but that's the problem. No facts have been articulated now. The question is, what facts might be articulated in an amended complaint? Your Honor, we've had briefing before this honorable court now. And even when plaintiff was arguing a few minutes ago, the bench asked plaintiff, what facts do you have showing intentional discrimination? And I didn't hear anything. I was listening with great care, read their papers. The reply brief comes up with new things like, oh, the mayor dismissed his white supporters at a meeting. The mayor and the city's demographer said that there was no racial concentrations in the city. I mean, this is the best the plaintiff can come up with. These facts aren't even... They don't even lend themselves to an intentional discrimination case. Much less so that the plaintiff has a plausible... So you're asking us to dismiss the amended complaint that has not yet been filed in district court... ...based on the description we're getting of the complaint right now? Your Honor, the plaintiff has had numerous opportunities both in writing and in the court today to articulate facts showing a plausible case for intentional discrimination. And they've come nowhere close. I think the plaintiff should be able to... You're asking us to make that determination rather than the district court with an amended complaint? So I'm asking this court to affirm what the district court did. The district court recognized that the plaintiff had an opportunity. Even in their opposition papers to the motion to dismiss 12b-6, the plaintiff had an opportunity to articulate in writing what facts they would allege in an amended complaint, a second amended complaint, to show intentional race discrimination. They didn't come up with anything. They had an opportunity at the hearing before the district court. The hearing that we have in the excerpts of record? That's correct, Your Honor. So you're suggesting that our cases require something more, that either laying it out in your briefing or maybe an affidavit with a proposed amended complaint to show what additional allegations would be made, and that didn't happen here? That didn't happen. I would say even argument, which is what the plaintiff has given us in his papers in the 12b-6 of the district court and in the papers that have been presented to this honorable court, there's been a lot of facts argued by plaintiff's counsel. None of them rise to the level of showing intentional discrimination against the Asian-American voters. In the hearing, nobody talked about facts one way or the other, and the district judge didn't say, what are your facts? That was almost all sort of tangled procedural in terms of what they wanted, which was to say, I want to go back to state court, and the plaintiffs couldn't quite figure out the basis on which to go back. But nobody was talking about amended complaint for the federal claims. Well, that's at the feet of the plaintiff, Your Honor. They had an opportunity, if they wanted to salvage their federal claims and say, give us an opportunity to amend, Your Honor, here's what we need to do. They did say, we want to preserve the federal claims. They stated that pretty clearly. Well, it's one thing to say, I want to keep my claims alive. It's the second thing to actually tell the court, these are the facts that I would allege if given the opportunity. But that really was not the topic of that hearing. I mean, I read the hearing a couple of times, actually. But I don't view the omission there as a fatal mistake. I don't think it was really relevant at that point. They were just talking about, how do we manage? I think he was trying to square the circle. But he was trying to figure out, how do I get back to state court for my state claims without sacrificing my federal claims? And he was having trouble figuring out how to do that. But we weren't talking facts. We were just talking procedural maneuvering. That's how the conversation played out. But it was, nonetheless, one opportunity among many opportunities the plaintiff has had to articulate specific facts that would support a claim for intentional discrimination. The ordinary way you do that is to file an amended complaint, which Judge Mendez foreclosed because he ruled against him on the merits with prejudice. Your Honor, respectfully, in my practice, I've heard attorneys make proffers either in their argument in the briefs or at the hearing saying, Your Honor, this is what I think I can allege. In another amended complaint, give me the opportunity to put this down in writing. The plaintiff has come up with a number of facts, re-registration of candidates, declining Republican voter registration in the city. None of this comes close to demonstrating facts supporting a claim for intentional race discrimination in the redistricting map that the city adopted. The plaintiff has been eager to get back to state court. That was what they were saying they wanted to do before Judge Mendez. And now they're back before state court. They got their wish. They have a case in state court. Under the CVR and under the Fair Maps Act, that is talking about this whole panoply of issues that the plaintiff has. We don't think that they have a case, but they have their case back in state court where they wanted it. And I submit that Judge Mendez was correct in determining that they did not state a claim under 12B6 for intentional race discrimination under either the Federal Voting Rights Act or the Equal Protection Clause. And if you could address the issue that I was talking with Mr. Rafferty about, wouldn't evidence of potential discrimination be admissible in the state court proceedings in furtherance of whatever claims they have under state law? So the California Voting Rights Act is just about whether a by-district voting method denies a community their right to influence an election. And if that's an issue, then it should be gone. You should remove yourself from an at-large, pardon me, an at-large system and move to by-district. There is a Fair Maps Act claim which focuses on the map itself. And the allegation there is that this map is discriminatory. Right. So this is, I apologize, Your Honor, this is a long-winded way for me to answer your question to say yes. Well, I'd be surprised if the answer is no, because I thought that was the whole purpose behind enacting these laws. These issues are in front of the state court, that the map, the current map, the new map is discriminatory. We don't think that they have a cause of action under any of their theories in the state court. We followed a demur. The state court said, I'm going to stay this case because I want to see what the federal court does with this appeal. So that's where we are. It's in the hands of the state court. It's not yet at issue. We're staying, depending on the outcome here. I'm reading from the hearing in front of Judge Mendez. Judge Mendez says, I'll say this, there may be a basis for you to amend the second claim, that is to say, the intentional discrimination claim under the Federal Voting Rights Act. There may be a basis for you to amend the second claim. It's a close case. And then Mr. Rafferty, after a couple of exchanges, says, please keep in mind that when this complaint was drafted, we didn't even have a map. So logically, it seems like I should not be my client, should not be prejudiced from evaluating that map under the Voting Rights Act. What am I supposed to do with that? So the map, I mean, the writing was on the wall. The city had not formally adopted the map. But at that point, the seated had four hearings and was pretty close. And that's why the plaintiff went in for a temporary restraining order in state court to stop the city from adopting the map that he saw that they were about to adopt. And the state court said, I don't think you've demonstrated a likelihood of success on the merits. So I'm not going to grant your TRO. If they actually adopt the map, maybe you can come back. Our standard for amending a complaint, I'll just read a case. It's black litter law that a district court must give plaintiffs at least one chance to amend a deficient complaint absent a clear showing that amendment would be futile. Now, Judge Mendez, I guess, changed his mind because he says, well, it's a close question as to whether you got a good claim under the second claim. Your Honor, I interpret Judge Mendez's comment a little bit different from you. I don't think at that point Judge Mendez was saying, gee, I think I'm going to grant you leave to amend. I think at that point, Judge Mendez was saying, this is kind of close, whether you've got anything here. And then after the hearing, he took a hard look. And he said, no, there's nothing here to be futile. OK. The upshot is it would be futile to get plaintiff leave to amend because plaintiff hasn't shown any facts. But as I look at what Judge Mendez did, the only way he could get the state law claims back to state court in an expeditious manner was to find that the federal claims were no good. So he says, my federal claims are no good. Here's what you want. You can go back to state court right now. So he kind of gave them what they wanted, at least with respect to the state claims. And he did it in the only way he thought he could. Now, I think he could have done it in a different way, which was what was asked for by Mr. Rafferty in his letter the next day, where he says, would you just please stay this in order to allow us to go to the state court? But he didn't do that. Well, the plaintiff was able to get back to state court. Plaintiff in that second ex parte to the federal court said, the client, the plaintiffs, we've authorized our attorney to file an ex parte in state court immediately. That didn't happen. So the plaintiffs got what they wanted. They got back to state court. Any delay, any prejudice because the election happened, that's due to the plaintiff. That's not any fault of Judge Mendez or the city. Your Honor, I see my time is ticking pretty low here. I want to make sure that I answer the court's questions if there are any others. Great, thank you. Thank you very much. Mr. Rafferty, you could have two minutes. Thank you. First of all, our strongest claim has always been Garza, intentional discrimination, and also the second form of constitutional violation based on Larios, because they did not follow the state guidelines. They shot for 10%. Those should not have been dismissed. And there's a 1983 claim, which you also referred to, which is not replicable in state court. So they chose to remove this, and they can't, the whole point of the California Voting Rights Act is to expedite it for plaintiffs who don't get damages, and to have a simple process. We've been at this now in state court for three years, and because of the extension of the safe harbor, they said they were going to do it, and they didn't do it. It cannot be the case that when you can moot a case and tell the court, and then they're telling this to the state court, that the case is moot and there's no jurisdiction. And then your new map is immune from being challenged. So we should have been given an opportunity to replead the Garza. But don't you want to challenge that map as a result of the November 2022 election? Well, can we? I don't know. I mean, isn't that what you want to do? Yes, but we've been dismissed with prejudice from federal court, and told that all of our claims of discrimination under the 14th Amendment have been dismissed with prejudice. Are you saying that there's no remedy under state law to come in to say, look, the city adopted this new by-district map, and based on the results in November of 2022, it's clearly producing a discriminatory effect on the Asian population? Well, normally, you plead the 14th Amendment violation in state court. That's not my question. Okay. And we did. Oh, I see. And you're saying... And it got removed. I'm not sure I can hear it because the federal court dismissed it. Right. The federal court dismissed it. They put in their SCR, the Ruiz-Lozito... I'm sorry, it's in the ER, the Ruiz-Lozito consent decree, and they basically say we were going to be found guilty of Section 2, and they didn't have it. So it was the intent clause, the intent branch of that. But Garza does not require a majority minority district, and we have a very plausible claim in Garza. I'm sorry I misstepped so badly in response to your question, Your Honor, but it doesn't require animus. I would have to go back to my clients. I shouldn't be repleting from the stand here. And finally, on the TRO, it wasn't decided on the merits. We were told... They argued, first of all, we hadn't filed timely. We hadn't served timely. And to my closing counsel's credit, they admit that that representation of the court was false, but the court cited the Superior Court in denying the TRO. And they said, which I thought was a good argument, that there was plenty of time to litigate. And then they removed. So there was end-claim mootness. So there was no opportunity to litigate at all. It was not decided on the merits. And we moved as quickly as we could to get a reservation for a notice motion before the federal court. So thank you very much. If there are no further questions... Great. Thank you. Thank you both for the helpful argument. The case has been submitted, and we are recessed for the day. Okay. All rise. This court for this session stands adjourned.
judges: FLETCHER, TALLMAN, LEE